```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

GREGORY and PATTY BALLARD,
husband and wife, residents of the
State of West Virginia;
INDIVIDUALS AND RESIDENTS OF
WEST VIRGINIA, et al.,

       Plaintiffs,

v.                                                  Civil Action No. 2:11-0366

UNION CARBIDE COMPANY, a Delaware
corporation, having its principal place
of business  in the State of West Virginia;
DOW CHEMICAL CORPORATION, a Delaware
corporation, with its principal place of
business in Michigan; ELKEM METALS CORPORATION,
a Norwegian corporation, having its principal
offices in the State of Pennsylvania;
GLOBE SPECIALTY METALS, INC., a Delaware
corporation, having its principal place
of business in the State of New York;
GLOBE METALLURGICAL, INC., a Delaware corporation,
having its principal place of business in
the State of Ohio; WEST VIRGINIA ALLOYS, INC.,
a Delaware corporation, having its principal
place of business in the State of West Virginia,

       Defendants.


### MEMORANDUM OPINION AND ORDER


       Pending are plaintiffs' motion to remand filed June 20, 2011, defendants' motion for leave to file a surreply, filed August 2, 2011, and the parties' joint motion to extend plaintiffs' time to respond to defendants' motion to dismiss ("joint request for an extension"), filed August 24, 2011.

Both plaintiffs and defendants requested, and were granted, briefing extensions respecting the motion to remand. The final brief on the matter, defendants' proposed surreply, was received August 2, 2001. Having considered the parties' positions concerning the necessity of a surreply, the court ORDERS that the motion for leave to file that document be, and it hereby is, granted. Further, inasmuch as the court has, by entry of an agreed order on September 9, 2011, adjudicated the joint request for an extension, the Clerk is directed to terminate that request.

I.

The representative plaintiffs, and the putative class on whose behalf they appear, are or were previously residents, property owners, workers, or students in an area within five miles of a metals plant located near Alloy, West Virginia ("Alloy Plant"). From 1934 to present, the Alloy Plant released substantial quantities of antimony, arsenic, chromium, iron, lead, manganese, vanadium, polycyclic aromatic hydrocarbons (PAHs), silica, and volatile and semi-volatile organic compounds ("hazardous substances") into the surrounding community. Recent tests indicate that residential areas within the five-mile radius are contaminated with levels of the hazardous substances.

There are a number of defendants.  Union Carbide Company ("Union Carbide") owned and operated the Alloy Plant from approximately 1934 to 1981.  Dow Chemical Corporation purchased Union Carbide in 2001.  Elkem Metals Corporation next owned the Alloy Plant from approximately 1981 to December 15, 2005.  According to plaintiffs, Globe Specialty Metals, Inc. ("Globe Specialty"), Globe Metallurgical, Inc. ("Globe Metallurgical"), West Virginia Alloys, Inc. ("WV Alloys"), or a combination of one or more of them, took over the Alloy Plant at that time and continue to own it.

On March 31, 2011, plaintiffs instituted this class action in the Circuit Court of Kanawha County.  The class representatives assert claims for (1) private nuisance, (2) trespass, (3) medical monitoring, and (4) unjust enrichment.  On May 20, 2011, defendants removed.  Defendants allege two bases for subject matter jurisdiction under 28 U.S.C. § 1332.  The first basis is complete diversity of citizenship, and satisfaction of the jurisdictional minimum, pursuant to section 1332(a)(1).  Defendants allege that they are corporate citizens of states other than West Virginia and that plaintiffs are West Virginia residents.

The second basis for diversity jurisdiction is the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711-1715.  Defendants assert that minimal diversity of citizenship exists[1], the class consists of more than 100 individuals, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

Defendants have also submitted the declaration of Malcolm Appelbaum, the Vice-President, Treasurer, and a Director, of WV Alloys.  He attests to the following facts:

> WV Alloys primary operations from 2005 until November 2009 were conducted in West Virginia, during which period it owned the Alloy Plant.
>
> On November 5, 2009, it sold the Alloy Plant.[2]
>
> All of the officers and directors of WV Alloys are residents of either Pennsylvania or New York.
>
> WV Alloys did not, at the time this action was instituted or thereafter, conduct any business in West Virginia, own the Alloy Plant, or have any employees in West Virginia.

---

[1] Minimal diversity of citizenship refers to the CAFA provision found in section 1332(d)(2)(A) providing that diverse citizenship occurs if there is "any member of a class of plaintiffs [that] is a citizen of a State different from any defendant . . . ."  28 U.S.C. § 1332(d)(2)(A).

[2] Plaintiffs assert that WV Alloys has not disclosed the documents supporting this sale.  The parties appear to be embroiled in an ongoing dispute respecting the voluntary disclosure of the sale information.  Plaintiffs have not sought leave to conduct jurisdictional discovery on the point.

> Since November 2009, WV Alloys' activities have been directed, controlled and coordinated by its officers in New York, with support from others located in Ohio.
>
> Corporate policy for WV Alloys is set by the officers in New York.
>
> WV Alloys' corporate books and records are maintained in New York.
>
> WV Alloys has maintained no physical headquarters or offices since November 2009.  While there remains a post office box in the entity's name in Alloy, West Virginia, that was never closed, it has not been used since November 2009.
>
> Since the November 2009 sale of the Alloy Plant, WV Alloys has "continued to make its normal state filings[3] . . . but has done so without undertaking a full review and adjustment of statements in light of the sale of the Alloy Plant."  (Appelbaum Aff. at 4).  The June 22, 2011, annual report filed with the Secretary of State by WV Alloys was "pro forma" and "incorrectly continued to list its principal office as Alloy, WV, as it had during its ownership between 2005 and 2009."  Id.

On June 20, 2011, plaintiffs moved to remand.  They challenged, however, only the first ground for removal, asserting as follows:

> [WV Alloys] . . . denies it is a corporate citizen of West Virginia in the Notice of Removal. However, WV Alloys has acted at least twice before the state government and state courts of West Virginia to assert it is a citizen of West Virginia by representing itself as a corporation having its principal place of business and principal office address and mailing address at Route 60 East, Alloy, Fayette County, West Virginia, as more fully discussed below.

---

[3]The states in which filings have been made are West Virginia and Delaware.

(Mot. to Rem. at 4).  Plaintiffs assert that, in two cases filed in 2008, <u>Hall v. Sodder Trucking Company, Inc.</u>, Civil Action No. 08-C-186, a civil action pending in the Circuit Court of Fayette County, and <u>Rogers et al v. Armstrong Public Service District</u>, 2:08-0034, an action instituted in this court, WV Alloys admitted to having West Virginia corporate citizenship.

Additionally, in corporate filings with the West Virginia Secretary of State on February 1, 2010, and June 22, 2011, WV Alloys stated that its principal office and mailing addresses were in Alloy, West Virginia.  The current information listed for WV Alloys on the Secretary of State's website continues to show an Alloy, West Virginia mailing and principal office addresses, along with a Charleston notice of process address.[4]  Filings of a similar nature were apparently made by WV Alloys in Delaware.

Defendants assert that, under <u>Hertz Corp. v. Friend</u>, 130 S. Ct. 1181 (2010), and Mr. Appelbaum's unchallenged affidavit, WV Alloys' principal place of business is New York.

---

[4]For the first time in their reply, plaintiffs note that the Globe Metallurgical, Inc., website reflects that WV Alloys "owns and operates [its] West Virginia plant . . . ."  (Pls.' Reply at 5 n.2 (citation omitted)).  WV Alloys is a wholly owned subsidiary of Globe Metallurgical, Inc.

II.

A.  Governing Standard

Title 28 U.S.C. § 1441(a) governs federal removal jurisdiction.  The statute provides pertinently as follows:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a).  One source of original jurisdiction is 28 U.S.C. § 1332.  The two subdivisions of that statute that are relevant here provide as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- . . . citizens of different States . . . .
>
> . . . .
>
> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which -- . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .

28 U.S.C. § 1332(a)(1) and (d)(2).

Our court of appeals has observed time and again that it is obliged to exercise caution in the removal setting:

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). . . . Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir.2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985).

Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005).

B.  Governing Law

Title 28 U.S.C. § 1332 provides the general means for assessing corporate citizenship: "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  In Hertz, the Supreme Court resolved a split of authority between the circuit courts of appeal respecting the meaning of the phrase "principal place of business."  It stated as follows:

> [W]e conclude that the phrase "principal place of business" refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have

> often metaphorically called that place the corporation's "nerve center." We believe that the "nerve center" will typically be found at a corporation's headquarters.

Hertz, 130 S. Ct. at 1186; Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 102 (4th Cir. 2011) (noting that "the Supreme Court [in Hertz] clarified that the phrase principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.") (internal quotation marks omitted).

The decision in Hertz also discussed the proof requirements governing the inquiry and who bears the burden:

> The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof. And when faced with such a challenge, we reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's "principal executive offices" would, without more, be sufficient proof to establish a corporation's "nerve center." . . . [I]f the record reveals attempts at manipulation -- for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat -- the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

Id. at 1194-95 (citations omitted); Central West Virginia, 636 F.3d at 105 ("It is true that, under Hertz, merely filing a

9

government form listing a principal place of business, without more, would be insufficient to establish a corporation's "nerve center.").

Using the aforementioned standards, the Supreme Court, noting Hertz' "unchallenged declaration" on the point, suggested that "Hertz's center of direction, control, and coordination, its 'nerve center,' and its corporate headquarters are one and the same, and they are located in New Jersey, not in California." Hertz, 130 S. Ct. at 1195.  A similar conclusion was reached in Central West Virginia, as summarized by Judge Wynn in the course of authoring the panel opinion:

> In this case, seven of Defendant Severstal Wheeling, Inc.'s eight officers, including its chief executive officer, chief operating officer, and chief financial officer, set corporate policies and oversee significant corporate decisions out of Dearborn, Michigan. Accordingly, under Hertz, Dearborn, Michigan is Severstal Wheeling's principal place of business. We therefore conclude that the district court erred in holding otherwise and reverse.

Central West Virginia, 636 F.3d at 102.

C.   Analysis

As noted, the Appelbaum affidavit reflects that (1) WV Alloys sold the Alloy Plant in November 5, 2009, long before this action was instituted, (2) the officers and directors of WV

Alloys reside outside West Virginia, (3) WV Alloys no longer conducts business in West Virginia and has no employees here, and (4) to the extent the entity engages in any corporate decision making presently, it is directed, controlled, and coordinated from New York and Ohio.

Notwithstanding argument and bare denials to the contrary by plaintiffs, the existing evidentiary record adequately demonstrates that New York, and perhaps to a lesser extent Ohio, are the places where WV Alloys' officers direct, control, and coordinate the corporation's activities. The court, accordingly, concludes that WV Alloys' principal place of business is in a state other than West Virginia.

In light of the essentially uncontested Appelbaum affidavit, the contrary "nerve center" indicators relied upon by plaintiffs are practically weightless. WV Alloys' filings in the Sodder and Hall case came in 2008, at a time when circumstances were much different than now. The record reflects that since the time of those court filings WV Alloys has divested itself of the Alloy Plant, corporate decision making now occurs in other jurisdictions, and WV Alloys has no employees in the state. Further, Appelbaum has attested to the fact that WV Alloys' most recent corporate governmental filings in West Virginia and

Delaware are erroneous and the product of oversight and neglect. Were it otherwise, controlling precedent indicates that the governmental filings would nevertheless constitute a very shaky basis upon which to pin corporate citizenship. See, e.g., Central West Virginia, 636 F.3d at 105 ("It is true that, under Hertz, merely filing a government form listing a principal place of business, without more, would be insufficient to establish a corporation's "nerve center.").

One other contention merits brief mention. Plaintiffs assert remand is warranted in view of the unpublished decision in Mays v. Monsanto, 2010 U.S. Dist. LEXIS 106451 (S.D. W. Va. Sept. 29, 2010). In Mays, plaintiff asserted that one of the named defendants, Apogee Coal Company, LLC ("Apogee"), was a diversity-destroying West Virginia entity. Apogee's sole member was Magnum Coal Company, whose principal place of business was in dispute. But there was also in existence another Magnum entity known as Magnum Coal Sales, LLC ("Magnum LLC").

As in this action, certain filings with a governmental agency suggested a West Virginia nerve center for Magnum Coal Company, and hence Apogee, and Magnum LLC. There were also some unanswered questions respecting the interrelationship, if any, between Magnum Coal Company and Magnum LLC. The court in Mays

consequently concluded that plaintiff failed to prove that Apogee was a West Virginia citizen:

> The relationship between [the two different] Magnum [entities] is unclear. The [governmental] filings suggest that . . . [one entity] . . . , at least, is subject to some control from Missouri. Nevertheless, both [Magnum entities] listed the location of their "Principal Office" as Charleston, West Virginia. The term "Principal Office" suggests that Magnum is directed, controlled, and coordinated from that location. The forms allow companies to list a "Principal Office," "Mailing Address," and, crucially, a "Local Office," strongly suggesting that "Principal Office" refers to the company's overall "nerve center," and not simply its principal in-state office.

Mays, 2010 U.S. Dist. LEXIS at 13-14. As is apparent, the circumstances in Mays made for a far murkier analysis. The undisputed Appelby affidavit provides much greater confidence that WV Alloys is, in fact, not a West Virginia citizen.

The court, accordingly, concludes that defendants have satisfactorily shown that it is appropriate to exercise diversity jurisdiction pursuant to section 1332(a). The court need not, at this time, adjudicate the existence of CAFA subject matter jurisdiction. It is ORDERED that plaintiffs' motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: October 3, 2011

John T. Copenhaver, Jr.
United States District Judge