UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**GREGORY BALLARD and
PATTY BALLARD,
husband and wife, et al.,**

      Plaintiffs,

v.                                                   Case No. 2:11-cv-00366

**UNION CARBIDE CORPORATION, et al.,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      This putative class action seeks relief in the form of medical monitoring based on the plaintiffs' alleged exposure to substances emitted from a metals plant in Alloy, West Virginia ("the Alloy Plant"). The plaintiffs are residents and/or former residents of communities within five miles of the Alloy Plant, real property or personal property owners, or workers or students. (First Amended Class Action Complaint, ECF No. 68, ¶ 2, at 2-3.) The Alloy Plant is alleged to have begun discharging toxic substances in 1934. *Id.* Pending before the court is the defendants' Motion to Compel Interrogatory Responses and Production of Documents responsive to the defendants' first set of discovery requests, (ECF No. 101), filed on April 18, 2012. The plaintiffs responded in opposition on May 14, 2012 (ECF No. 109). The defendants filed a reply on May 24, 2012 (ECF No. 111). The parties have attempted to resolve their disputes without the necessity of court action.

      The defendants' motion raises the following issues:

1. Does the plaintiffs' failure to verify interrogatory answers constitute a waiver of objections to the interrogatories?

2. Must the plaintiffs provide information about their psychiatric or psychological condition[s], their consumption of alcohol, the use of prescription or non-prescription medications, and/or any illegal drugs or other controlled substances? (It appears that the plaintiffs do not resist providing information regarding their history of tobacco use.)

3. Must the plaintiffs provide information about "any other disease" (other than those specifically listed in Interrogatory No. 16)?

4. Must the plaintiffs offer proof that monitoring procedures "exist," are "available," and would be prescribed by a "qualified physician?"

5. Is a general response to interrogatories on behalf of all plaintiffs a sufficient response?

6. What additional documents, if any, must the plaintiffs produce with respect to a report written by 3TM International?

1. <u>Verification of interrogatory answers</u>

The defendants served interrogatories on the 36 plaintiffs on February 8, 2012 (ECF No. 63). By stipulation, answers were due March 19, 2012 (ECF No. 75). The answers consisted of one set of responses on behalf of all the plaintiffs, 23 sets of individual responses which were "not final," with no verifications. (ECF Nos. 82, 101, at 5-6, 16-17 n.2.) As of April 18, 2012, the plaintiffs had not served final, verified answers for 27 of the 36 plaintiffs. (ECF No. 101, at 6.) The plaintiffs have informed the presiding District Judge that several of the plaintiffs, perhaps 12, intend to dismiss their claims; their voluntary dismissal orders are due June 14, 2012 (ECF No. 117).

The defendants contend that the plaintiffs' incomplete and unverified responses should be treated as a failure to respond, citing Rule 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond"). Citing an unpublished Memorandum Opinion and Order in *Tustin v. Motorists Mut. Ins. Co.*, No. 5:08-cv-111 (N.D. W. Va. Jan. 23, 2009, ECF No. 38), (Siebert, M.J.), the defendants argue that the lack of verified responses equates to a failure to serve responses and, therefore, waiver of objections. (ECF No. 101, at 17.)

The plaintiffs respond that the interrogatories were onerous, that their answers do not constitute a waiver of objections, that attorneys (not parties) assert objections, and that counsel (not the plaintiffs) appropriately answered general interrogatories. (ECF No. 109, at 15-16.)

The defendants' reply asserts that the interrogatories were not burdensome, that as of May 24, 2012, 20 of the plaintiffs have not provided final and verified answers, that the general response is insufficient, and that all objections were waived. (ECF No. 111, at 3-7.)

Rule 33(b)(3), Federal Rules of Civil Procedure, requires that each interrogatory "to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(5) provides that the person "who makes the answers must sign them" and "the attorney who objects must sign any objections." The only provision in Rule 33 relating to waiver of objections is found in (b)(4) which states that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

If an incomplete answer, or an unverified answer, is treated as a failure to

3

answer, as required by Rule 37(a)(4), then Rule 37(a) sets forth the consequences, which are the granting of a motion to compel and the possibility of being required to pay the opposing party's reasonable expenses. Rule 37(a) does not state that a penalty for failing to answer is waiver of objections. The court finds that the <u>objections</u> were timely served on the defendants, signed by counsel for the plaintiffs, and were not waived. The <u>answers</u> to the interrogatories were not timely served on the defendants and were not verified, which is why they are subject to the instant motion to compel.

2. <u>Psychiatric, psychological, alcohol and drug use inquiries</u>

The defendants propounded Interrogatory Nos. 10, 11 and 17 which ask each plaintiff to do the following:

> <u>Interrogatory No. 10</u>: Identify each medical, psychiatric or psychological condition you have had throughout your life, setting forth, for each:
> (a) The date upon which the condition was first identified;
> (b) All healthcare professionals with whom you have consulted for this condition;
> (c) A detailed description of the specific medical or psychiatric or psychological condition;
> (d) The treatment, if any, that you received for this condition, including any medications and the dosages of such medications;
> (e) All pharmacies where you have received prescription medications; and
> (f) Whether you claim that the medical condition was caused or made worse by exposure to substances of concern in this litigation.
>
> <u>Interrogatory No. 11</u>: For each physician, hospital, clinic and other healthcare professional or facility with whom you consulted or are currently consulting for diagnosis or treatment related to a medical condition, physical symptom, psychiatric or psychological condition listed in response to Interrogatory No. 10, set forth:
> (a) The name and address of the physician, hospital, clinic or other healthcare professional or facility;
> (b) The date of the first visit;
> (c) The name of each procedure and diagnostic testing performed, including, but not limited to radiographs, laboratory work, pathology, EMB/NCS, ultrasound, dialysis, surgery, and the location and the date of

>    the procedure;
>    (d) A detailed description of the results of each procedure performed; and
>    (e) If applicable, whether you are still under medical, psychiatric, or psychological care from the provider or the institution, and the date of the last visit or contact.
>
>    <u>Interrogatory No. 17</u>: Describe in detail your personal habits in regards to the use of tobacco products, consumption of alcohol, the use of prescription or non-prescription medications, and/or any illegal drugs or other controlled substances.   For each product and/or substance identified in response to this Interrogatory, provide:
>    (a) The type of product or substance used;
>    (b) The frequency and duration you have used such product or substance; and
>    (c) Whether you have ever received treatment or rehabilitation of any form or type to help you stop using any product and/or substance.

The plaintiffs objected to these interrogatories as being overbroad in seeking "information about conditions not at issue in the present action and without any limitation as to time."  (ECF No. 101-4, at 15-16, 20.)  The plaintiffs further object because Nos. 10, 11 and 17 seek information about psychiatric or psychological conditions, tobacco use and substance abuse which, they contend, are not reasonably calculated to lead to the discovery of information admissible in a medical monitoring class action, noting that they are not seeking monitoring for such conditions.  *Id.* at 16-17, 21.  They claim that all three interrogatories are part of a pattern of harassment intended to discourage the plaintiffs from pursuing their action.  *Id.*  The plaintiffs have provided releases to defense counsel for obtaining their medical records; thus the defendants may obtain such psychiatric or psychological information by using the releases.  *Id.* Otherwise, the plaintiffs decline to provide such information.  *Id.*

According to their answer to Interrogatory No. 8, the plaintiffs seek medical monitoring for the following conditions: cancer, diabetes, hypertension, severe

respiratory damage, Parkinson's disease, mental retardation, and neurotoxic disorders. (ECF No. 101-4, at 11.) The procedures, tests, regimens and/or methods which the plaintiffs believe should be specified in a medical monitoring plan include a "complete neuropsychological evaluation at baseline, then every 2 years or as indicated by signs or symptoms of declining mental function allowing for appropriate support and/or treatment." *Id.* at 12. The evaluation would include "detailed objective testing of memory, concentration, mood, mental capacity, motor and sensory skills, coordination and executive function." *Id.*

The defendants argue that the plaintiffs have placed their physical and mental health at issue and thus their medical records are relevant. (ECF No. 101, at 7-8.) They assert that the interrogatories target information which would tend to show if a plaintiff's individual characteristics, medical history, or personal habits would place that person at risk of contracting the subject diseases, independent of exposure from emissions from the Alloy Plant. *Id.* at 9. The defendants contend that the requested information will assist in evaluating whether the representative parties fairly and adequately protect the interests of the class. *Id.* at 13.

The plaintiffs respond that the interrogatories are a "gross intrusion into the personal lives of the named plaintiffs" and have a chilling effect on these and future plaintiffs who may have claims as a result of corporate pollution. (ECF No. 109, at 9.) They focus on the issue of exposure from emissions from the Alloy Plant, and whether the plaintiffs are thereby at increased risk of contracting a disease, rather than whether the plaintiffs may have been exposed to toxins elsewhere or may be predisposed to a disease. *Id.* at 10. The plaintiffs further assert that the elements of *Bower* do not

necessitate such discovery. *Id.* at 11.

The defendants' reply argues that they must be able to conduct discovery into any factors that could have caused the plaintiffs' risk of disease independent of the plaintiffs' alleged exposure to substances emitted from the Alloy Plant, and any facts that prove the plaintiffs would require the medical monitoring requested even in the absence of the alleged exposure. (ECF No. 111, at 7.) The defendants note that the plaintiffs have requested neuropsychological evaluations as a necessary diagnostic tool; thus it is essential to determine whether the plaintiffs are already experiencing symptoms and undergoing treatment. *Id.* at 11.

The court is persuaded that the defendants' Interrogatories 10, 11 and 17 are appropriate and should be answered fully and fairly. The plaintiffs have specifically identified "neurotoxic disorders" as among the conditions to be medically monitored. The report from 3TM International, Inc., obtained by the plaintiffs, lists at least three chemicals (lead, manganese and mercury), which were/are emitted from the Alloy Plant and which are established as neurotoxic. "Proposed National Strategy for the Prevention of Neurotoxic Disorders, 1988," (June 6, 2012, 3:00 p.m.), http://www.cdc.gov/niosh/docs/89-134/. Ethyl alcohol is a common neurotoxicant. *Id.* Certain controlled substances, particularly methamphetamine, contain such dangerous ingredients that hazardous materials teams must respond to their production sites. Exposure to lead, manganese and mercury can result in depression, psychosis, emotional lability and personality changes, among other effects. While it is understandable that some plaintiffs may be reluctant to share their private medical and psychological histories, their privacy concerns can be eased somewhat by the protective

order which has been entered in this action (ECF No. 81). The motion to compel is granted with respect to Interrogatories 10, 11 and 17. The court directs the parties to avoid using specific plaintiffs' names when addressing medical conditions in documents filed on the public record.

3. Information about "any other disease"

The defendants' Interrogatory No. 16 reads as follows:

Describe any family or personal history of illness and/or genetic disease, including but not limited, to chloracne; diabetes; liver abnormalities; . . . multiple myeloma, or any other disease you allege you are at significantly increased risk of contracting because of the alleged exposure to the substances of concern.

(ECF No. 101-4, at 20.) The plaintiffs objected, asserted that the interrogatory is overbroad and vague, and agreed to provide information about the specifically named diseases and abnormalities. *Id.*

The defendants argue that the plaintiffs are "the only source of information about the scope of their claims." (ECF No. 101, at 14.) While the plaintiffs have listed seven categories of diseases in their answer to Interrogatory No. 8(a) [cancer, diabetes, hypertension, severe respiratory damage, Parkinson's disease, mental retardation, and neurotoxic disorders], the defendants note that this list is neither comprehensive nor definitive. *Id.*

The plaintiffs respond that they have provided information on the diseases and abnormalities listed by themselves and the defendants, and they decline to guess at diseases in which the defendants may be interested. (ECF No. 109, at 12.) They repeat their agreement to provide information about specific diseases listed by the defendants. *Id.*

The defendants' reply complains that the plaintiffs have yet to provide a verified statement of the diseases which they claim to be at significantly increased risk of contracting. (ECF No. 111, at 13.)

It is apparent that the plaintiffs do not want to limit themselves to a specific list of diseases and abnormalities and the defendants want a finite list. To date, the plaintiffs have been vague in their responses, as shown by their listing "cancer" (which covers a host of ailments) and "neurotoxic disorders" (which can include physical and mental symptoms). The court is aware that the defendants have not completed their production of discovery material; thus it is possible that the defendants emitted substances presently unknown to the plaintiffs. The plaintiffs, of course, have the burden of proof. In *Bower*, the Supreme Court of Appeals wrote that the plaintiffs must demonstrate "a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." 522 S.E.2d at 433. The plaintiffs must provide verified responses, listing the particular serious latent diseases for which they seek medical monitoring; the motion to compel is granted as to Interrogatory No. 16.

4. Monitoring procedures

In Interrogatory 8(h) and 8(i), the defendants ask the plaintiffs to describe "the qualifications, experience, and/or equipment required to administer the monitoring procedures, tests, regimens, and/or methods contemplated by the proposed medical monitoring plan," and "the identity of any and all health care personnel within a reasonable distance of the Putative Class Area equipped with the qualifications, experience, and equipment required to administer the monitoring procedures, tests,

regimens, and/or methods contemplated by the proposed monitoring plan." (ECF No. 101-4, at 10-11.) The plaintiffs, in their unverified general answer, responded that "the procedures identified as part of the medical monitoring protocol could be administered at any accredited medical center." *Id.* at 15.

The defendants contend that "it is unlikely that any single accredited medical center could administer all of the monitoring requested" by the plaintiffs, noting their demands for helical CTs, virtual colonoscopies, neuropsychological evaluations, etc. (ECF No. 101, at 16.) The plaintiffs respond that these interrogatory subparts are not justified or supported by *Bower*. (ECF No. 109, at 13-15.) The defendants' reply asserts that the plaintiffs need only identify "the name of any facilities that can provide the requested procedures." (ECF No. 111, at 12.)

The motion to compel is denied as to Interrogatory 8(h) and 8(i). These requests are premature; if medical monitoring is mandated as a result of this action, the monitoring procedures will be addressed then. As noted in *Bower*, if diagnostic tests become available in the future, a plaintiff may have a right to demonstrate the effectiveness of such tests. 522 S.E.2d at 433.

5. <u>The general, unverified response</u>

Counsel for the plaintiffs signed an unverified response to the interrogatories "on behalf of all Plaintiffs." (ECF No. 101-4, at 1.) He lodged general and specific objections and provided some extensive answers. It is understandable that plaintiffs' counsel would try to avoid the tedious effort of preparing 36 verified answers to interrogatories, particularly as many of the answers to particular interrogatories would be the same. For example, it would be expected that all of the plaintiffs would list the

same monitoring procedures. However, there is no provision in Rule 33 of the Federal Rules of Civil Procedure which permits such a practice, and the defendants are entitled to receive verified and complete responses to each interrogatory as to which an objection has not been sustained. It appears that the plaintiffs have continued to serve verifications and individual plaintiff's answers to the interrogatories on the defendants; it also appears that a number of the plaintiffs are dropping out of this litigation as of June 14, 2012. The motion to compel is granted as to those persons who remain as plaintiffs; their verified and complete answers to interrogatories shall be served no later than July 2, 2012.

6. <u>3TM International report</u>

The defendants seek an order compelling the plaintiffs to produce sampling data and related documents in the possession of 3TM International or AXYS Analytical. (ECF No. 101, at 20.) The plaintiffs respond that they do not have possession of the data and documents, but if they acquire them, the plaintiffs will produce them to the defendants. (ECF No. 109, at 17.) The defendants reply that counsel for the plaintiffs has been aware of the existence of the documents for six years, and his inability to obtain and produce the documents is inexcusable. (ECF No. 111, at 14.)

Notably absent from the defendants' arguments is any citation to a Federal Rule of Civil Procedure which requires a party to produce documents which have never been in the party's possession. The motion to compel is denied on this point.

It is hereby **ORDERED** that the defendants' Motion to Compel (ECF No. 101) is granted in part and denied in part as set forth above. The parties shall bear their own costs.

The Clerk is directed to transmit this Order to counsel of record.

ENTER: June 8, 2012

                                                              Mary E. Stanley
                                                              United States Magistrate Judge